IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GAIL L. WOLL,

        Plaintiff,                      No. CIV S-07-0864 GGH

    vs.

MICHAEL J. ASTRUE,             <u>ORDER</u>
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act ("Act").[1] For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

<u>BACKGROUND</u>

        Plaintiff, born February 20, 1958, applied for SSI, with a protective filing date of March 28, 1997, and applied for DIB with a filing date of April 25, 1997. (Tr. at 169, 327.)

---

[1] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

1

Plaintiff alleged she was unable to work since November 20, 1996, due to a back injury. (Tr. at 170.) In a decision dated October 14, 1999, ALJ L. Kalei Fong determined that plaintiff was not disabled. (Tr. at 135-41.)  Plaintiff then filed an action in this court on February 5, 2001. On November 6, 2001, after the Commissioner represented that the claim file could not be located, this court remanded the matter under sentence six to locate or reconstruct the file.  In a decision dated June 7, 2002, ALJ Plauche F. Villere, Jr., determined that plaintiff was not disabled.  (Id. at 13-21.)  Plaintiff returned to this court which remanded on May 31, 2005 for the purpose of obtaining vocational testimony regarding the effect of plaintiff's crouching restriction on her ability to do sedentary work, and whether there was other work plaintiff could do. (Id. at 406-14.) In a decision dated October 13, 2006, ALJ Mark C. Ramsey determined plaintiff was not disabled. The ALJ made the following findings:[2]

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the

1. The claimant met the insured status requirements of the Social Security Act through March 31, 1997.

2. The claimant has not engaged in substantial gainful activity since November 21, 1996, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine with congenital transitional lumbosacral formation, cervical disc disease, and peptic ulcer disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 10 pounds occasionally and less than 10 pounds frequently, to sit for six hours in an eight hour day and to stand and/or walk for two hours in an eight hour day. The claimant also has manipulative limitations that preclude more than occasional overhead work and postural limitations that preclude squatting.

6. The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from November 21, 1996 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 330-39.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Credit the Treating Physicians' Opinions Without a Legitimate Basis; B. Whether the ALJ Failed to Credit

---

burden if the sequential evaluation process proceeds to step five. Id.

1  Plaintiff's Testimony as to the Nature and Extent of Her Pain and Functional Limitations; and C.
2  Whether the ALJ Failed to Pose a Legally Adequate Hypothetical to the Vocational Expert and
3  Improperly Found Plaintiff Capable of Performing Her Past Work.
4  LEGAL STANDARDS
5  　　　　The court reviews the Commissioner's decision to determine whether (1) it is
6  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in
7  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).
8  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.
9  Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might
10 accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.
11 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206
12 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical
13 testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.
14 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational
15 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
16 Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).
17 ANALYSIS
18 　　　A.  Whether the ALJ Failed to Credit the Treating Physicians' Opinions Without a
19 Legitimate Basis
20 　　　　Plaintiff claims that the ALJ erred in failing to place more weight on the treating
21 opinions of Drs. Budhram, Howland and Havton than on the examining or nonexamining
22 physicians.[3]
23 　　　　The weight given to medical opinions depends in part on whether they are
24 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

---

[3] Pl.'s Mot. at 30:4-5.  Dr. Havton was a consulting physician.  (Tr. at 264.)

F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[4] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is

---

[4] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

5

insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

First, it should be noted that this court's remand order of May 31, 2005, found in part that the previous ALJ had improperly accepted portions of the opinions of Drs. Howland and Havton without satisfactory explanation. This court also found, nevertheless, that Dr. Howland's opinion was supported by substantial evidence.

In this case, the ALJ found the opinions of Drs. Havton, Howland, and Pliam to be "very compelling." (Tr. at 333.) He gave Dr. Howland's opinion the greatest weight, however. (Id. at 337.) Only Dr. Budhram's opinion was rejected by the ALJ. In allocating this treating physician little weight, he explained:

> Upon review of Dr. Budhram's assessment, the undersigned finds that his limitations, especially in sitting are not consistent with the objective record. As noted above, the examinations leading up to this assessment show no further signs of motor loss, sensation loss, reflex loss or tenderness with only continued positive straight leg raising, tense muscles and decreased range of motion (see Exhibit B11F). Although Dr. Budhram relied on increased spasms as his underlying support for his less than sedentary limitations, there were no such spasms noted upon his examinations leading up to this assessment (see Exhibit B11F). There were also no signs of such spasms upon Dr. Pliam's examination and her spasms are controlled by her medication regimen (Exhibit B15F). The undersigned thus finds that Dr. Budhram's assessment seemingly relies too heavily on the claimant's subjective complaints and is somewhat out of proportion to the objective evidence of record.

(Tr. at 336.)

A review of Dr. Budhram's records indicate that plaintiff complained of leg cramps on occasion. (Tr. at 303.) There was a note of positive straight leg raising on December 12, 2001. (Id. at 301.) On July 3, 2001, there was decreased lordosis. (Id. at 302.) The ALJ correctly summarized these records which contained no notation of motor loss, sensation loss, reflex loss, tense muscles or decreased range of motion between January, 1995 and February 25, 2002. (Tr. at 296-314.) Nor was there any notation of spasms in these records which preceded or coincided with the time period in Dr. Budhram's evaluations, dated September 28, 2000, and March 6, 2002, in which he noted that plaintiff limped due to spasms, and was experiencing

1  increased spasms. (Id. at 284, 297.)  Although Dr. Budhram thought plaintiff could do less than
2  the full range of sedentary work and could not work an eight hour day, he was the only physician
3  who so limited plaintiff, and the ALJ fully explained his reasons for rejecting this physician,
4  while relying on three other opinions, one of which was a treating doctor, who unanimously
5  agreed that plaintiff could do a range of sedentary work.  As pointed out by defendant, even if Dr.
6  Budhram's opinion were considered in regard to plaintiff's functional limitations, the ALJ gave a
7  hypothetical which included these limitations, and the vocational expert testified that here were
8  jobs plaintiff could do.[6]  (Tr. at 361-63.)

9  More recently on September 18, 2004, Dr. Pliam, a consulting orthopedist, noted
10 no signs or complaints of spasms, as reported by the ALJ.  (Id. at 542-47.)  In fact, this physician
11 also found that plaintiff walked normally, and walked on her heels and toes with some
12 discomfort.  (Id. at 544.)  Range of motion of her neck was normal.  Flexion in the back was
13 40%, extension was 10%, and right and left flexion were 20%.  (Id.)  Straight leg raising
14 produced pain at 60%.  Range of motion in all other areas was normal.  Motor strength was
15 normal.  (Id. at 545.)  There was decreased sensation in the lower right leg laterally and in the
16 right great toe.  (Id.)  Despite these limitations, Dr. Pliam opined that plaintiff could lift 25
17 pounds occasionally and 15 pounds frequently, and could sit for 1-2 hours continuously and for
18 six hours in a work day.  He diagnosed her with degenerative lumbar spondylosis, lumbar disc
19 disease status post percutaneous procedure in 1991 described as nucleotomy, and probable right
20 sciatica.  (Id. at 546.)
21 \\\\\

---

[6] Dr. Budhram's opinion that plaintiff could not work an eight hour day is not considered because it is a physician's opinion on the ultimate issue of disability.  "A statement by any physician that the claimant is disabled or unable to work is a conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his determination as to whether the claimant is disabled within the meaning of the [Act]."  Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988), 20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th Cir. 1989).

1         Plaintiff maintains the theory that if only one treating physician opinion is to be adopted, it should be the most recent one as the most probative. Insofar as Title II is concerned, which has a mostly inflexible onset date in this case because of the date last insured, i.e., plaintiff must be found disabled prior to the date last insured (March 31, 1997), plaintiff's counsel is simply in error. All things being equal, the older in time of the treatment probably reflects a more accurate picture closer to the time relevant for Title II disability. Title XVI can have an onset date of through the final administrative decision; therefore, the timing of recent treatment becomes more important in the disability equation. Plaintiff contends that Dr. Budhram provided the most recent treating records and therefore should be accorded more weight than Dr. Howland, whose records indicated treatment through the year 2000. The aforementioned opinion of Dr. Pliam speaks to plaintiff's condition in 2004, the same year of Dr. Budhram's most recent records. The ALJ was entitled to rely on him despite the fact that he was not a treating doctor.

        Plaintiff also contends that the ALJ did not provide a specific reason for rejecting Dr. Havton in addition to Dr. Budhram. The ALJ clearly did not reject Dr. Havton. As mentioned above, he stated that he found his opinions, as well as those of Drs. Howland and Pliam, to be "very compelling." (Id. at 333.) He later stated that he considered the opinions of Dr. Havton as he had a previous history with plaintiff while Dr. Pliam evaluated plaintiff only in September, 2004, and also because plaintiff's condition had become stabilized by the time of Dr. Havton's evaluation. (Id. at 337.)

        The ALJ reviewed Dr. Havton's findings in detail. (Tr. at 333-34.) On January 26, 1998, Dr. Havton, a treating neurologist, conducted an evaluation, finding "signs of a right sided L4 radiculopathy with weakness and numbness together with a positive straight leg raising on the right side." (Id. at 267.) As summarized by the ALJ, plaintiff had "full range of motion throughout the bilateral upper and lower extremities with normal strength throughout her extremities, normal muscle bulk and tone, intact sensation except for some sensation loss in the L4 dermatome, normal reflexes, and independent gait, able to heel toe and tandem walk." (Id. at

8

334, 265-67.) As a result, Dr. Havton opined that plaintiff could sit, stand and walk up to six hours per work day with frequent breaks every 30 to 40 minutes. Plaintiff could lift and carry 10 pounds frequently and occasionally. She could kneel, crouch and crawl only occasionally, but there were no other limitations. (Id. at 267.) The ALJ based one of his hypotheticals on Dr. Havton's limitations, and relied on it in part to find plaintiff could do her past work. (Id. at 338, 356-57.) Therefore, plaintiff's argument that the ALJ did not provide legitimate reasons to reject the limitations assessed by Dr. Havton is without merit.

The physician upon whom the ALJ relied upon the most, Dr. Howland, evaluated plaintiff on July 21, 2000 at the request of the DSS. This orthopedic surgeon, after examining plaintiff and reviewing her medical records and imaging studies, diagnosed plaintiff with congenital transitional lumbosacral vertebral formation, degenerative lumbar disc disease at 2 levels and lumbar spinal stenosis, cervical disc disease, and mild arthritis of the right knee. (Tr. at 280.) He opined that she could lift and carry 10 pounds occasionally and less than ten pounds frequently, stand or walk up to two hours per day, and sit up to six hours in a work day. She could occasionally reach overhead, but squatting was precluded. (Id. at 281.) Dr. Howland had the benefit of plaintiff's medical records, and his RFC is supported by his complete exam.

In regard to the ALJ's opinion that Dr. Budhram relied too heavily on plaintiff's subjective complaints, this court agrees, as discussed in the next section. The ALJ gave specific and legitimate reasons to reject the opinion of Dr. Budhram that are supported by substantial evidence in the record.

B. Whether the ALJ Failed to Credit Plaintiff's Testimony as to the Nature and Extent of Her Pain and Functional Limitations

Plaintiff contends that the ALJ failed to properly evaluate her complaints of pain and physical limitations which were clearly documented by the medical evidence.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater,

9

94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[7] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

---

[7] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

1999).

Here, the ALJ found plaintiff to be "fairly credible" in regard to her functional capacity but that she exaggerated her impairments and their affect on her ability to work. (Tr. at 337.) This opinion was based on her medical history and the evaluations by Drs. Havton, Howland and Pliam which concluded that plaintiff was able to do a wide range of sedentary work. The ALJ recounted plaintiff's own testimony regarding her functioning level, and referred to her statements that she was better since her back surgery in 1997, although she was still experiencing some pain and cramps in her legs. The ALJ also described plaintiff's activity level and her own reports that she could drive and do some chores such as dusting, cooking, doing dishes, and shopping with her daughter, and that she could stand for an hour at a time and sit for two hours at a time. Her testimony was that she could sit for one hour and approximately 3/4 of a day and stand for ten minutes at a time every half hour.

The ALJ's analysis is consistent with the record and with the evaluations of the physicians upon which he relied. See discussion Section A *supra*. On June 9, 2000, plaintiff reported in a pain questionnaire that she could do some walking, driving, and household chores. (Tr. at 206.) She reported that she could do errands such as grocery shopping without assistance, but would need help loading heavy items. She could walk one block, stand one hour, and sit for two hours. She could drive, and do light housekeeping without assistance. (Id. at 207.) The ALJ referred to plaintiff's testimony regarding improvement since her 1997 surgery and her functioning level. At the December 5, 2005 hearing, plaintiff testified that she changes the sheets on her bed, but she does not do laundry or vacuum. Her daughter does these chores for her. (Tr. at 383.) Her daughter also mops the floor, and plaintiff has mopped it once in the past six months. Plaintiff is able to cook two meals per day, and does grocery shopping once a week, with her daughter picking up the heavy items. (Id. at 384.) Plaintiff also attends church services twice a week for an hour on Sunday and an hour and a half on Wednesday, where she is seated. (Id. at 385, 393.) She waters pots in the garden but does no other yard work. (Id. at 386.) Plaintiff takes

a walk twice a week for up to 45 minutes, but usually walks 20 to 30 minutes. Whenever she goes out, she must lie down on her stomach for one and a half to two hours afterwards.[8] (Id. at 394.)

Plaintiff testified that she takes Vicodin twice a day unless she will be driving, and Ibuprofen as needed. (Id. at 388-89.) On further questioning by her attorney, however, she testified that she really does not take Vicodin during the day and only takes it late in the afternoon if she's having a painful day, but otherwise takes it at night to sleep. (Id. at 390.) She also stated that she takes Ibuprofen about three times per week, due to stomach problems. (Id. at 391.) This medication is fairly conservative in light of plaintiff's complaints. The remainder of plaintiff's treatment has also been fairly conservative, as noted by various physicians. (Tr. at 542, 89.) There has been no physical therapy or steroid injections, and although further surgery was recommended in the form of a discectomy, plaintiff declined it, despite reporting improvement from her previous surgery in 1992. (Tr. at 89.)

Plaintiff claims that because the ALJ found her to be fairly credible, under Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007), the ALJ can only reject her testimony by giving specific, clear and convincing reasons. In this case, the ALJ's reasons were specific and clear and convincing. Despite plaintiff's testimony that she can do certain tasks, she testified that she could only work two hours a day, which the ALJ found to be exaggerated. (Id. at 401.) This limit is not realistic in light of the specialists' evaluations of plaintiff's impairments and three consistent opinions by Drs. Howland, Havton and Pliam that she can do a range of sedentary work. Furthermore, the inability to do household chores such as vacuuming or laundry is not necessarily inconsistent with the ability to do sedentary work which only requires lifting ten pounds, sitting most of the time, with walking and standing only occasionally. 20 CFR §

---

[8] Plaintiff reported to doctors and testified that she had to lie down on her stomach to get relief from her back pain. (Tr. at 261, 393.) In light of her back and neck problems, it is quite curious that she would choose to lie on her stomach. See www.spineuniverse.com ("avoid sleeping on your stomach, as this may aggravate back and neck pain"); www.arthritis.ca ("sleeping on your stomach forces your neck into an awkward position and is not recommended if you have chronic back or neck pain").

404.1567.

Plaintiff also picks apart the ALJ's characterization of the opinions of Drs. Howland and Havton, by claiming that the ALJ incorrectly claimed that these doctors found plaintiff could do a wide range of sedentary work. (Tr. at 337.) Plaintiff argues that these doctors did not so categorize plaintiff but instead merely described her limitations, and it would not be within their purview to give such a vocational assessment. In fact, the court interprets the ALJ's opinion as merely giving a name to a set of functional limitations, that based on these limitations, the ALJ concluded that they described sedentary work. Such an error is harmless at worst. An error which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).

The aforementioned references in the record tend to refute plaintiff's own statements in support of her disability claim. An ALJ may disregard a claimant's self-serving statements if they are not supported by the objective evidence. Hudson v. Bowen, 849 F.2d 433, 434 (9th Cir. 1988). The ALJ is accorded great weight in his determination of credibility. Id. See also Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988). Furthermore, this court gives deference to the ALJ's assessment of plaintiff's testimony, and he opined that it appeared to be exaggerated. (Tr. at 337.) "Credibility determinations are the province of the ALJ." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995). In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]. See Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)." Morgan v. Apfel, 169 F. 3d at 599. The ALJ properly analyzed the evidence in relation to the appropriate factors required by the Bunnell line of cases.

C. Vocational Testimony

Plaintiff asserts that the hypothetical to the vocational expert was not legally adequate, that the ALJ failed to credit the expert's testimony, and found that plaintiff can do her

1 past work in violation of the law.

2      Hypothetical questions posed to a vocational expert must include all the substantial, supported physical and mental functional limitations of the particular claimant. Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir.1997). If a hypothetical does not reflect all the functional limitations, the expert's testimony as to available jobs in the national economy has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). But see Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by other reliable evidence). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, substantial evidence must support the hypothetical which ultimately serves as the basis for the ALJ's determination. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).[9]

    Plaintiff had past work as a typist, data entry clerk, and front desk receptionist, which are all sedentary, and as an activities coordinator for a school which was light work as she performed it.[10] (Tr. at 352-54.) The ALJ found that plaintiff could do her past work as receptionist, after posing four hypotheticals to the expert. The first hypothetical was based on Dr. Howland's limitations that plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently; she could stand or walk up to two hours per day, sit for six hours per day,

---

[9] Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). The ALJ is free to accept them if they are supported by substantial evidence or reject them if they are not. Id. at 756-757.

[10] The expert noted that this job was categorized as sedentary as it is normally performed. (Tr. at 354.)

14

occasionally reach overhead, and squatting was precluded.[11]  (Id. at 354-55.)  The expert testified that plaintiff could do her past four jobs, but could do the activities coordinator job only as performed in the economy as sedentary work, not as she had performed it as light work.  (Id. at 355.)  The expert was also asked to name three other sedentary jobs which responded to the hypothetical, which he did.

        The second hypothetical was based on the limitations set forth by Dr. Havton, and restricted plaintiff to sitting, standing and walking up to six hours per day with a break to change position every 30 to 40 minutes.  Plaintiff could lift ten pounds frequently or occasionally.  Kneeling, crouching and crawling could be done only occasionally and not frequently or repetitively.  (Id. at 356-58.)   The expert testified that plaintiff could do her past four jobs as typist, data entry clerk, front desk receptionist, and activities coordinator (as performed in the economy) pursuant to this hypothetical.  (Id. at 358-59.)  If this hypothetical added that plaintiff needed 15 minute breaks every 30 to 40 minutes, the expert stated that there would be no jobs.  (Id. at 359.)

        The third hypothetical was based on Dr. Pliam's limitations and precluded plaintiff from lifting more than 25 pounds occasionally and 15 pounds repetitively.  Sitting was limited to one to two hours continuously for a total of six to eight hours.  The expert testified that plaintiff could do all of the previously mentioned jobs.  (Id. at 360.)

        The fourth hypothetical was based in part on Dr. Budhram's limitations.  Plaintiff was limited to walking one to two hours per day, and less than one hour without interruption, standing one to two hours, and less than one hour without interruption, sitting two to four hours, and one to two hours without interruption.  Plaintiff could occasionally lift 10 to 20 pounds and frequently lift 5 to 10 pounds.  Bending was restricted.  (Id. at 361.)  The expert testified that

---

[11] This court had previously found that Dr. Howland's opinion was supported by substantial evidence.  Civ.S. 01-0380 WBS GGH, Findings and Recommendations, filed May 31, 2005, at 7.

plaintiff could not do her past work because such a job would require a sit/stand option, but she could do the telephone information clerk and the order clerk jobs and work as a call out operator. (Id. at 362-63.)

Plaintiff contends that the hypothetical did not include her limitations, such as her need for rest periods, her inability to stoop/crouch, and her inability to work full time, most of which are based on Dr. Budhram's opinion or plaintiff's testimony. Dr. Budhram's opinion was properly rejected, and plaintiff's exaggerated statements were properly discounted by the ALJ in the previous sections. In any event, the expert testified that although plaintiff could not do her past work under hypothetical number four (with Dr. Budhram's limitations), she could do other work. It is true that the expert testified that no employer would put up with 15 minute breaks every 30 to 40 minutes; however, Dr. Havton, the physician who stated that plaintiff would need breaks this often, did not state that they would have to be 15 minutes in length. (Tr. at 92.) This limitation was properly accounted for by the ALJ's second hypothetical which posited a need to change position every 30 to 40 minutes. Furthermore, Dr. Budhram did not require breaks for plaintiff in his evaluation. (Tr. at 297-99.) His limitations, other than his opinion on the ultimate issue of whether plaintiff could work 40 hours per week, were properly posed to the expert who found that plaintiff could do other work, naming three jobs which exist in significant numbers nationally. (Id. at 363.) In any event, an ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). In this case, the ALJ properly refused to include a limitation of 15 minute breaks every 30 to 40 minutes as it was not supported by the majority of the evidence.

\\\\\

In regard to plaintiff's assertion that the ALJ did not include her inability to stoop/crouch in the hypotheticals, the vocational expert specifically testified that plaintiff could do the aforementioned jobs if she could only crouch occasionally because they do not require more than that. (Tr. at 374.) Only if plaintiff were precluded from crouching (or kneeling) would she not be able to do these jobs. (Id. at 376.) On this remand, the ALJ found that the RFC described by Dr. Howland should get the most weight, and precluded squatting. (Id. at 337.) Consequently, the ALJ's ultimate conclusion appears to be based on hypothetical number one, as he found that she can do her past work of typist or data entry clerk. (Id. at 339.)   Plaintiff asserts that the expert testified that all the aforementioned jobs require a person to crouch up to two hours a day so that if a person is precluded from crouching (squatting) or kneeling, that person would be precluded from performing all the identified jobs. Pl.'s Mot. at 34. Plaintiff is mistaken, however, in that the medical evidence permits plaintiff to do occasional crouching, and precludes only squatting. (Tr. at 267, 281.)   The first hypothetical precluded squatting, and the expert testified that she could do her past four jobs.  As an extra precaution, the second hypothetical which provided for only occasional kneeling, crouching and crawling, still permitted plaintiff to do her past four jobs.

Because the hypotheticals to the vocational expert accurately reflected plaintiff's limitations, substantial evidence supports the ALJ's finding in this regard, and his findings that plaintiff could do her past work as a receptionist.

CONCLUSION

In sum, the court finds the ALJ's assessment is fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 09/17/08                                         /s/ Gregory G. Hollows

U.S. MAGISTRATE JUDGE

GGH/076
Woll0864.new.wpd